**PEJEPSCOT INDUSTRIAL PARK, INC. d/b/a Grimmel Industries, Plaintiff,**

v.

**MAINE CENTRAL RAILROAD CO., Springfield Terminal Railway Co., and Guilford Transportation Industries, Inc., Defendants.**

Civil No. 99–112–P–C.

United States District Court, D. Maine.

July 26, 1999.

James T. Kilbreth, Rita H. Logan, Verrill & Dana, Portland, ME, for Plaintiff.

Glen L. Porter, Eaton, Peabody, Bradford & Veague, Bangor, ME, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff Pejepscot Industrial Park, Inc. d/b/a Grimmel Industries filed a six-count First Amended Complaint seeking: a declaration of ownership rights of a railroad spur (Count 1); an injunction preventing destruction of the spur and interference with Grimmel's right to repair, maintain, and use the spur (Count II); unlawful refusal to provide rail service, in violation of 49 U.S.C. § 11101 (Count III); breach of duty to Grimmel as third-party beneficiary of the freight easement agreement between MEC and the State of Maine (Count IV); breach of contract (Count V); and tortious interference with business advantage and expectancies (Count VI). Defendants Maine Central Railroad Company, Springfield Terminal Railway Company, and Guilford Transportation Industries, Inc. move pursuant to 12(b)(1) to dismiss this action with prejudice because the Court lacks subject matter jurisdiction. Alternatively, Defendants move to dismiss the action without prejudice under the doctrine of primary jurisdiction for all of the issues within the special expertise of the Surface Transportation Board. The Court will grant Defendants' Motion to Dismiss for lack of jurisdiction.

## I. FACTS

Defendant Maine Central Railroad ("MEC") is a common carrier providing railroad freight services. First Amended Complaint ¶ 2. Defendant Springfield Terminal Railway ("ST") operates MEC's railroad. Defendant Guilford Transportation ("Guilford") owns MEC, ST, and various other entities providing transportation services. First Amended Complaint ¶ 4. At the heart of this controversy is a 3000–foot railroad spur located in Topsham,

Maine, northeast of the Androscoggin River and southwest of the main line of the "Lewiston Lower Road" Branch. First Amended Complaint Ex. 1 at Ex. A at 2. The spur was constructed in the late 19th century to provide freight service to a paper mill owned by the Pejepscot Paper Company. First Amended Complaint ¶ 8. In January 1992, Grimmel purchased the abandoned Pejepscot Paper mill and incorporated as Pejepscot Industrial Park engaged in the business of salvaging, selling, and shipping scrap metal. First Amended Complaint ¶ 7. Eastbrook Timber Company owns the land adjacent to Grimmel's facility. First Amended Complaint ¶ 8. A spur railroad track (the "spur") runs across Grimmel's land and Eastbrook's land to a main railroad track. First Amended Complaint ¶ 8. Eastbrook has no operations at its site. First Amended Complaint ¶ 9. Thus, at this time the spur serves only Grimmel. First Amended Complaint ¶ 9.

The main railroad track to which the spur connects traverses from Brunswick/Topsham to Lewiston, and is commonly known as the "Lewiston Industrial Track." First Amended Complaint ¶ 10. MEC's predecessors acquired the track in 1937. First Amended Complaint ¶ 10. In February 1991, MEC executed a deed (the "Deed") granting to the State of Maine portions of the Lewiston Industrial Track. First Amended Complaint Ex. 1, Ex. A. Among the parcels granted was the Lewiston Lower Road Branch, which lies within Brunswick, Topsham, and Lisbon, Maine and is the portion of the line the spur connects. First Amended Complaint ¶ 11; First Amended Complaint Ex. 1, Deed Ex. A. In conveying the Lewiston Lower Road Branch of the rail line to the State, MEC expressly reserved "a certain parcel of land in Topsham known as the 'Pejepscot Spur Line.' " First Amended Complaint ¶ 12; First Amended Complaint Ex. 1, Ex. A at 2. The Pejepscot Spur Line is the spur serving Grimmel's facility. MEC does not own the "parcel of land" reserved

in the Deed. First Amended Complaint ¶ 12.

As part of the sale of the Lewiston Industrial Track, MEC, along with ST, entered into a "Freight Easement Agreement" (the "Agreement") with the State. First Amended Complaint Ex. 2. Pursuant to the Freight Easement Agreement, Defendants reserved "from the Lines conveyed to the State ... a rail freight easement for the purpose of providing common carrier rail freight service to all shippers and shippers' facilities on the Lines." First Amended Complaint ¶ 14; First Amended Complaint Ex. 2, part 1.1. Further, the Agreement provided that "[t]he conveyance of the Lines by MEC to the State excludes any and all rights and obligations of the MEC under federal law to provide, directly or through ST, common carrier freight service and the MEC retains all such rights and obligations to provide said service to all shippers and shippers' facilities located on the Lines." First Amended Complaint ¶ 14; First Amended Complaint Ex. 2, part 1.2.

By 1994, Grimmel's operations were fully in swing and Grimmel was prepared to ship scrap metal out of Maine. First Amended Complaint ¶ 15. The most efficient and least expensive method of such shipment is by rail. First Amended Complaint ¶ 15. Thus, Grimmel requested that Defendants provide common carrier freight service at Grimmel's Pejepscot Industrial Park. First Amended Complaint ¶ 15. Defendants refused to provide service, asserting no appropriate rail cars were available. First Amended Complaint ¶ 16. After shipping the product out of Portland for a time, by other means, Grimmel again requested rail service at the Pejepscot industrial facility. First Amended Complaint ¶ 22. Defendants provided Plaintiff with rail service rates which Grimmel accepted. First Amended Complaint ¶ 23. Apparently before any product was shipped by rail, Defendants again refused to provide service to Grimmel. First Amended Complaint ¶ 24. Thereaf-

ter, Grimmel began negotiations with the State over repairs to the Lewiston Lower Road Branch track and the provision of rail service to Grimmel upon MEC's formal abandonment of rail service on the Lewiston Industrial Track line. First Amended Complaint ¶ 25.

In June 1998, MEC filed with the Surface Transportation Board a Notice of Exemption for abandonment and discontinuance of service over the Lewiston Industrial Track line. First Amended Complaint ¶ 26; First Amended Complaint Ex. 5. In its Notice of Exemption, MEC represented to the Board that the Lewiston Lower Road Branch portion of the line was already owned by the State. First Amended Complaint ¶ 27; First Amended Complaint Ex. 5 at 3. It further represented that "the State of Maine, or a third party acting in conjunction therewith, will acquire the remainder of the Line and/or operating rights over the same post-abandonment." First Amended Complaint ¶ 27; First Amended Complaint Ex. 5 at 3. MEC maintained that "no salvage operations will be undertaken" after abandonment. First Amended Complaint ¶ 27; First Amended Complaint Ex.5, Ex. D at 4. MEC also represented that "[t]he proposed abandonment will not affect carrier operations in the area." First Amended Complaint ¶ 27; First Amended Complaint Ex.5, Ex. D at 5.

The Surface Transportation Board permitted abandonment of the line. First Amended Complaint ¶ 28. Thereafter, Defendants informed Grimmel that they intend to rip up the spur and sell it for scrap. First Amended Complaint ¶ 28. Destruction of the spur will entirely cut off Grimmel's ability to obtain rail service from whichever rail carrier operates the main rail line after. MEC abandons it. First Amended Complaint ¶ 29. The State of Maine has agreed to upgrade the Lewiston Lower Road Branch so that Grimmel may be provided rail service, so long as Grimmel upgrades the spur. First

Amended Complaint ¶ 30. In June 1999, however, Grimmel requested MEC's consent to repair and upgrade the spur at Grimmel's own expense, so that Grimmel could have access to rail service on the Lewiston Lower Road Branch. First Amended Complaint ¶ 31. MEC refused to allow Grimmel to repair the spur at Grimmel's own expense. First Amended Complaint ¶ 32. Thus, Grimmel will be unable to obtain rail service when the main rail line is restored. First Amended Complaint ¶ 32.

## II. DISCUSSION

Federal jurisdiction may never be presumed. Instead, the proponent—here, the Plaintiff—has the burden of demonstrating the existence of federal subject matter jurisdiction. *See Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir.1996); *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). On a motion to dismiss, this Court is required to construe the complaint liberally, treating all factual averments as true and indulging all reasonable inferences in favor of Plaintiff. *See Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1 (1st Cir.1987).

### A. Subject Matter Jurisdiction

Grimmel asserts two bases of subject matter jurisdiction for its claims—federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). First Amended Complaint ¶ 5. The only federal question expressly raised is whether Defendants violated federal law by refusing to provide rail service to Grimmel or by otherwise interfering with the provision of rail service, in violation of 49 U.S.C. § 11101(a). Complaint ¶¶ 43–48.

Late in 1995, in line with the general trend regarding deregulation, Congress enacted the Interstate Commerce Commission Termination Act, which dissolved the Interstate Commerce Commission. Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), Pub.L. No. 104–88, 109 Stat. 803 (1995)(codified at scattered sections of U.S.C.A., including 49 U.S.C.A. §§ 10101–16106 (1997)). *See also* 49 U.S.C.A. § 101 note (1997) (detailing the Act's codification). The passage of the ICCTA, however, did not signal the complete end of regulation. In its place, Congress established the Surface Transportation Board ("STB") within the Department of Transportation. 49 U.S.C.A. § 701 (1997). Under the ICCTA the jurisdiction of the STB over

> transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is *exclusive*. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b)(emphasis added).

Plaintiff argues that § 10501 is a preemption provision only. Specifically, Plaintiff contends that the language of § 10501 demonstrates that it is intended to preempt state law and other federal remedies, not eliminate the district court's jurisdiction. *See* 49 U.S.C. § 10501(b). The Court disagrees with Plaintiff. Although § 10501(b), which governs the STB's jurisdiction, states "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." That section also provides that the STB has exclusive jurisdiction over "transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and

other operating rules), practices, routes, services, and facilities of such carriers." 49 U.S.C. § 10501(b). This broad provision which governs the STB's jurisdiction is not limited to addressing the preemptive effect of the remedies provided in the statute. By its plain language, this provision awards exclusive jurisdiction to the STB with respect to transportation by rail carriers, including a carrier's obligations under section 11101(a).[1]

Plaintiff also argues that 49 U.S.C. § 11704(a) and (c)(1) provide this Court with original jurisdiction over a civil action for damages caused by Defendants' purported violation of § 11101(a). Subsection (a), which states "[a] person injured because a rail carrier providing transportation or service subject to the jurisdiction of the Board under this part does not obey an order of the Board, except an order for the payment of money, may bring a civil action in a United States District Court to enforce that order under this subsection," is not implicated here because there is no predicate order of the STB, addressing the issue in this case, to enforce in this Court. The Court also disagrees with Plaintiff's reading of § 11704(c)(1) as furnishing a basis for this Court's jurisdiction. Subsection 11704(c)(1) provides that "[a] person may . . . bring a civil action under subsection (b) of this section to enforce liability against a rail carrier providing transportation subject to the jurisdiction of the Board under this part." At first blush, § 11704(c)(1) appears to authorize a civil action in this court. If this were correct, however, there would be little remaining of the STB's exclusive jurisdiction. After a full review of the statute, the Court now understands the term "enforce liability" in § 11704(c)(1) to mean enforce a determination previously made by the Board. Thus,

the authorization to bring a civil action in the district court under § 11704(b) for "damages sustained by a person as a result of an act or omission of that carrier in violation of this part" and for "amounts charged that exceed the applicable rate for the transportation" necessarily requires an initial decision of the Board. As stated above, there is no such order by the STB in this case and, therefore, neither 49 U.S.C. §§ 11704(a) nor (c)(1) provide the Court with jurisdiction.

The parties cite numerous cases in support of their respective positions. The Court finds that all but one of these cases do not address the issue raised in this case. The only case to directly address this issue is *DeBruce Grain v. Union Pacific R.R.*, 983 F.Supp. 1280 (W.D.Mo. 1997), *affirmed on other grounds,* 149 F.3d 787 (8th Cir.1998), where the court held that the STB has exclusive jurisdiction over plaintiff's claims that defendant railroad failed to satisfy its obligation to provide rail service under §§ 11101(a) and 11121(a)(1).[2] As pointed out by the *DeBruce Grain* court, the statute seems to permit, the filing of certain types of suits in federal district court. *See* 49 U.S.C. §§ 11704(a), (d) and 49 U.S.C. § 11705(e)(authorizing suit to be filed in federal district court to enforce an order of the STB); 49 U.S.C. § 11705(a)(authorizing suit by rail carrier to be filed in federal district court to recover charges for transportation or service provided); 49 U.S.C. § 11705(b)(to recover overcharges); 49 U.S.C. § 11706(d) (authorizing suit to be filed in federal district court to recover under a bill of lading). Despite the Court's awareness of these statutory provisions apparently authorizing certain types of actions to be brought in the a federal district court and, thus, undermining the

---

1. Title 49 U.S.C. § 11101(a) states that a rail carrier providing transportation or service "shall provide the transportation or service on reasonable request."

2. The *DeBruce Grain* court went on to hold that even if it did have subject matter jurisdic-

tion, it would apply the doctrine of primary jurisdiction and dismiss the case. On the latter basis alone, the decision of the district court was affirmed by the Court of Appeals for the Eighth Circuit.

STB's exclusive jurisdiction, none of the exceptions to exclusive jurisdiction are applicable here where the claim is for failure to provide transportation or service. Hence, the statutory language providing for the exclusive jurisdiction of the STB is applicable to this case.

■ Plaintiff next asserts that, regardless of the ICCTA, jurisdiction is proper pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." Because federal courts are courts of only limited jurisdiction, there is a general presumption against federal jurisdiction which a plaintiff bears the burden of rebutting. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted). Furthermore, statutes purporting to confer federal jurisdiction are to be construed narrowly, with ambiguities resolved against a finding of federal jurisdiction. *See Mars Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed.Cir.1994); *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1067 (5th Cir. 1984) (citations omitted). The Court finds that Plaintiff fails to meet its burden to establish jurisdiction here.

The jurisdictional grant of § 1331 does not mean that jurisdiction cannot be precluded by another statute. "To establish a cause of action in district court under § 1331 [the plaintiffs] must show first that their action ... 'arises under' ... [federal law] and second that section 1331 jurisdiction is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere." *Connors v. Amax Coal Co., Inc.*, 858 F.2d 1226, 1229–30 (7th Cir.1988) (concluding that, even if plaintiff's claims arose under ERISA or federal common law, § 1331 could not supersede provisions of Longshore and Harbor Workers' Compensation Act and Black Lung Benefits Act conferring exclusive jurisdiction in the courts of appeals). Here, the ICCTA does create the cause of action. However, the fact that federal law creates the cause of action does not end the inquiry regarding the existence of federal subject matter jurisdiction. Section 10501(b) establishes the exclusive jurisdiction of the STB over this type of action. By virtue of such a specific assignment, Congress abrogates district court jurisdiction under § 1331. Federal statutes frequently assign jurisdiction to a court or entity other than the federal district courts. *See, e.g.*, 28 U.S.C. § 1491(a)(1) (assigning jurisdiction of certain takings claims to the Court of Federal Claims); 29 U.S.C. § 160(f) (assigning original jurisdiction to review agency orders under the National Labor Relations Act to federal courts of appeals). The Court concludes that because the ICCTA reflects Congress's intent to authorize this type of suit in the STB only, and it is a more specific statutory provision conferring exclusive jurisdiction elsewhere, Plaintiff cannot rely on the general federal question jurisdiction of § 1331.

■ Although not asserted in its First Amended Complaint, Plaintiff contends in its memorandum of law that federal jurisdiction is also authorized by 28 U.S.C. § 1337(a), which grants district courts original jurisdiction over any proceedings arising under any Act of Congress regulating commerce. The same tests for determining whether an action "arises under" federal law for purposes of § 1331 apply to determine whether an action "arises under" an Act of Congress regulating commerce. *See Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust for Southern Calif.*, 463 U.S. 1, 8 n. 7, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (citation omitted). Accordingly, any action that could be brought in federal court under § 1337(a) could also be brought under § 1331. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3574, at 235 (2d ed.1984). In this case, Plaintiff's argument that § 1337 authorizes federal jurisdiction fails for the same reason that

its argument under § 1331 fails. Like § 1331, § 1337 is a general jurisdictional statute. As such, it can be displaced by another statute that assigns jurisdiction elsewhere. *See Simmons v. Arkansas Power & Light Co.,* 655 F.2d 131, 133 (8th Cir.1981); *Assure Competitive Transp., Inc. v. United States,* 629 F.2d 467, 471 (7th Cir.1980). Thus, Congress' intent to limit certain types of suits under the ICC-TA to the STB supersedes the general grant of jurisdiction in § 1337.

## B. Supplemental Jurisdiction

 Defendants next argue that the Court cannot exercise supplemental jurisdiction over Plaintiff's state law claims because it does not have a proper basis for federal subject matter jurisdiction. District courts have supplemental jurisdiction over "claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may exercise supplemental jurisdiction over state law claims even if it dismisses all claims over which it has original jurisdiction. 28 U.S.C. § 1367(a). The court may not, however, exercise supplemental jurisdiction if there is no proper basis for federal subject matter jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1255 (6th Cir.1996); *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996); *Edmonds v. Clarkson,* 996 F.Supp. 541, 552 (E.D.Va.1998). As one commentator has explained:

> if the federal claim was dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication. The dismissal means that there never was a valid claim within the court's original jurisdiction to which the state claims may be supplemental. Therefore, the

district court has no discretion to exceed the scope of its Article III power.

16 James Wm. Moore et al., *Moore's Federal Practice* § 106.66 (3d ed.1999). As discussed above, this court does not have original jurisdiction over Plaintiff's claim in Count III, and therefore, § 1367(a) does not grant this Court supplemental jurisdiction to hear the other claims Plaintiff has raised.

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss be, and it is hereby, **GRANTED**.