**Thomas J. FLYNN, and Cheryl L. Rodgers, on behalf of themselves and on behalf of all others similarly situated, Plaintiffs,**

v.

**BURLINGTON NORTHERN SANTA FE CORPORATION [BNSF], aka/dba Burlington Northern and Santa Fe Railway Company, Defendants.**

No. CS–00–0071–WFN.

United States District Court, E.D. Washington.

May 2, 2000.

Jeffrey Roger Bunch, Spokane, WA, for plaintiff.

William John Schroeder, Paine Hamblen Brooke Coffin Miller, Spokane, WA, Peter C. Choharis, Robert M. Jenkins, III, Mayer Brown & Platt, Washington, DC, Janet D. Robnett, Paine Hamblen Coffin Brooke & Miller LLP, Coeur D'Alene, ID, for defendant.

## ORDER

NIELSEN, Chief Judge.

A motion hearing was held April 26, 2000. Jeffrey Bunch represented the Plaintiffs; Robert Jenkins, Janet Robnett, and William Schroeder represented the Defendants. The Court granted Defendants' Motion for Permission to Cite Unpublished Opinions (Ct.Rec.8). The Court took under advisement Defendants' Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Ct.Rec.12).

The Court has reviewed the file, the briefing on the Motion to Dismiss, and is fully informed. For the reasons stated below, the Defendants' Motion to Dismiss for Lack of Jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) is granted.

## I. PROCEDURAL BACKGROUND

Plaintiffs Thomas Flynn and Cheryl Rodgers filed this action on March 7, 2000, on behalf of themselves and all Spokane County individuals who rely on the Spokane Valley—Rathdrum Prairie Aquifer [Aquifer] for water. The Defendants are Burlington Northern Santa Fe Corporation and Burlington Northern Santa Fe Railway Company [collectively BNSF]. BNSF received conditional use permits on March 6, 2000, from the Kootenai County Commissioners to proceed with the permitting process for construction and operation of a BNSF railroad refueling facility [Hauser Facility] located over the Aquifer in Kootenai County, Idaho. Complaint ¶¶ 2.1–2.3. Plaintiffs allege that environmental contamination from the proposed facility has the potential to impact the aquifer. Complaint, ¶ 2.8. Federal question jurisdiction is asserted. Complaint ¶ 1.3.

Plaintiffs allege that the Kootenai County Commissioners did not have legal authority to issue the conditional use permits and that the Surface Transportation Board [STB] has exclusive jurisdiction over the permitting of such facilities. Complaint ¶¶ 2.5, 2.6. Plaintiffs seek a declaratory judgment that BNSF must apply to the STB for necessary permits prior to constructing the facility. Plaintiffs further request an injunction (without bond) to re-

strain BNSF from requesting further local permits and from constructing and operating the facility until the STB acts on the application.

## II. DISCUSSION

BNSF contends that this case must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). BNSF asserts that the Plaintiffs lack standing and that the Court therefore does not have subject matter jurisdiction over the case. BNSF further asserts that the Plaintiffs have failed to identify a federal statute under which they can state a claim, so no federal question jurisdiction exists. BNSF suggests that the proper forum in which the Plaintiffs may raise their concerns is before the STB. Plaintiffs argue that they have standing before this Court and that the Court has inherent jurisdiction and is uniquely positioned to offer the required declaratory and injunctive relief on the issues presented.

The Court will first discuss the railroad regulatory scheme as it relates to the Hauser Facility. Against that backdrop, the Court will examine whether the Plaintiffs have standing and whether federal question jurisdiction exists.

***Railroad Regulatory Scheme.*** Prior to 1996, Congress provided comprehensive administrative regulation of railroads through the Interstate Commerce Commission [ICC]. *See, Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 321, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981) (ICC has exclusive jurisdiction over railroad abandonment of lines precluding action under state law against the railroad for abandonment). Even under this comprehensive regulatory scheme, however, there was no federal regulation of rail line spurs and side tracks. *Illinois Commerce Com'n v. I.C.C.,* 879 F.2d 917, 922 (D.C.Cir.1989) (in absence of federal preemption, state may regulate intrastate railroad spurs).

The federal regulatory scheme was changed significantly with the enactment of the Interstate Commerce Commission Termination Act [ICCTA or the Act], 49 U.S.C.S. §§ 10101, *et seq.* effective January 1, 1996. The purpose of the Act was to terminate the ICC, replace it with the STB within the Department of Transportation, and to significantly reduce regulation of surface transportation industries. S.REP. No. 176, 104TH CONG., 1ST SESS. (1995).

The jurisdiction of the STB is set forth in the statute and provides as follows:

(b) The jurisdiction of the Board over—

(1) transportation by rail carriers, and the remedies provided in this part [49 U.S.C.S. §§ 10101, *et seq.*] with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) The construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part [49 U.S.C.S. §§ 10101, *et seq.*], the remedies provided under this part [49 U.S.C.S. §§ 10101, *et seq.*] with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C.S. § 10501(b) (1999). Local authority, which had previously existed over spurs and side tracks, was now preempted. *CSX Transp., Inc. v. Georgia Public Service Com'n,* 944 F.Supp. 1573, 1584 (N.D.Ga.1996).

The ICCTA "evinces an intent by Congress to assume complete jurisdiction, to the exclusion of the states, over the regulations of railroad operations." *Id.* The Ninth Circuit agrees that the preemption of the Act is exclusive and broad. *City of Auburn v. U.S.,* 154 F.3d 1025, 1030 (9th Cir.1998), *cert. denied,* 527 U.S. 1022, 119 S.Ct. 2367, 144 L.Ed.2d 771 (1999). In

*City of Auburn*, the Ninth Circuit addressed the scope of the STB's jurisdiction vis-a-vis local environmental regulations. In that case, the railroad, BNSF, desired to reacquire a rail line. BNSF initially sought local permits but then contended the local environmental review was precluded by federal regulation. *City of Auburn*, 154 F.3d at 1027–28. BNSF then sought approval from the STB. Citing 49 U.S.C. § 10501(b)(2), the court affirmed the STB ruling that local environmental regulation of rail lines was preempted. *Id.* at 1031; *see, also, Soo Line Railroad Co. v. City of Minneapolis*, 38 F.Supp.2d 1096, 1101 (D.Minn.1998) (local permitting regulations regarding the demolition of five buildings preempted by the ICCTA); *Burlington Northern Santa Fe Corp. v. Anderson*, 959 F.Supp. 1288, 1296 (D.Mont.1997) (ICCTA preempts Montana law authorizing state agency to exercise regulatory authority over railroad agencies in Montana).

■ In contrast, manufacturing activities and other facilities owned by railroads which are not integrally related to the railroad's provision of interstate rail service, i.e., non-transportation facilities, are not subject to STB jurisdiction or subject to federal preemption. *Borough of Riverdale—Petition for Declaratory Order—The New York Susquehanna & Western Railway Corp.*, 1999 WL 715272, STB Finance Docket No. 33466 at 10 (9/9/99). Such facilities, like other non-railroad property, are subject to state and local regulation. *Id.*

It is undisputed by the parties that the STB has exclusive jurisdiction over the Hauser Facility, and the Kootenai County's permitting regulations are preempted by the ICCTA. By agreeing that only the STB has jurisdiction over the Facility and that local permitting laws are preempted, the parties recognize that the Hauser Facility is "integrally related to the provision of interstate rail services." *Id.*

A state or local law that is preempted by federal law is without effect. *Anderson*, 959 F.Supp. at 1292. While it is agreed that Kootenai County's permitting regulations are not binding on BNSF, there is no authority for the proposition that BNSF is precluded from voluntarily complying with local permitting regulations.

Kootenai County may exercise some control over the Hauser Facility in several other ways. First, it appears BNSF will be required to comply with local codes for electrical, building, fire and plumbing unless the codes restrict BNSF from conducting its operations or unnecessarily burden interstate commerce. *Borough of Riverdale, supra* at 8–9; *Village of Ridgefield Park v. New York, Susquehanna & Western Railway Corp.*, 163 N.J. 446, 750 A.2d 57, 65–66 (2000). Second, even though local regulations are preempted, local authorities may still exercise their police powers to protect the health and safety of the local community. *Cities of Auburn and Kent, Washington—Petition for Declaratory Order—Burlington Northern Railroad Co.—Stampede Pass Line*, 1997 WL 362017, STB Finance Docket No. 33200, p. 10 (7/1/97). Finally, the local government entity may play a role in implementing federal statutes such as the Clean Air Act and Clean Water Act. *Id.* at p. 8; *Borough of Riverdale, supra*, at 7.

There is an important distinction between the STB having jurisdiction over a facility and the STB regulating the construction of the facility. Although the ICCTA vests jurisdiction of rail transportation exclusively with the STB, the statute also excludes the Board's regulatory authority "over construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks." 49 U.S.C. § 10906. The STB has addressed 49 U.S.C. § 10501 and 49 U.S.C. § 10906 and concluded that Congress intended that neither the STB nor local authorities could regulate the construction and disposition of spur and switching tracks, i.e., auxiliary tracks. *Cities of Auburn and Kent*, STB decision, *supra* at 12; *see, also, United Transp. Union v. Surface*

*Transp. Bd.,* 183 F.3d 606, 612 (7th Cir. 1999) (while STB has exclusive jurisdiction over spur track, it lacks authority to regulate spur track).[1]

Ancillary facilities also are not regulated by the STB. *Borough of Riverdale, supra* at 5. In *Borough of Riverdale,* the STB observed that "[m]any rail construction projects are outside of the Board's regulating jurisdiction. For example, railroads do not require authority from the Board to build or expand facilities such as truck transfer facilities, weigh stations, or similar facilities ancillary to their railroad operations, or to upgrade an existing line or to construct unregulated or industrial team tracks." *Borough of Riverdale, supra* at 5. Should the STB determine that the Hauser Facility is an ancillary facility on a spur or side track, the STB may decide that while it has jurisdiction, it does not have regulatory authority over the facility. *Borough of Riverdale, supra* at 10 ("[J]urisdiction over railroad facilities ... is limited to those facilities that are a part of a railroad's ability to provide transportation services, and even then the Board does not necessarily have direct involvement in the construction and maintenance of these facilities.")

***Standing.*** Under Article III, § 2 of the Constitution, federal courts have jurisdiction over disputes only if they present a "case" or "controversy." This is a "bedrock requirement," *Valley Ford Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), a threshold matter that must be determined prior to considering whether the complaint states a claim. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 93–94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). One element of the case-or-controversy requirement is that Plaintiffs, based on their complaint, must establish that they have standing to sue. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing "is perhaps the most important of [the jurisdictional] doctrines." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

To meet the standing requirement of Article III, Plaintiffs must allege facts essential to show jurisdiction. *FW/ PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). On a motion to dismiss for lack of standing, the Court must accept as true the material allegations of the complaint and construe the complaint in favor of the Plaintiffs. *Graham v. Federal Emergency Management Agency,* 149 F.3d 997, 1001 (9th Cir.1998). The "irreducible constitutional minimum of standing contains three elements": (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130; *accord, Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* —— U.S. ——, ——, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000).

"First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (internal citations and quotation marks omitted). An injury is particularized if it affects "the plaintiff in a personal and individual way." *Lujan,* 504 U.S. at 560 n. 1, 112 S.Ct. 2130.

Plaintiffs allege they were injured by the Kootenai County Commissioners' procedure of granting permits with which they disagreed. The Commissioners are not parties to this suit. Moreover, it is not disputed that the STB has exclusive jurisdiction over transportation

---

1. BNSF argues that the STB would not exert regulatory authority over the Hauser Facility due to the exception found in 49 U.S.C. § 10906, but that issue is not before this Court.

by rail carriers, 49 U.S.C. § 10501(b), which includes BNSF. The fact that BNSF voluntarily participated in a local permitting process does not injure Plaintiffs as process before the STB is still available to Plaintiffs pursuant to 49 U.S.C. § 11701(b). The statute provides that:

> [a] person ... may file with the Board a complaint about a violation of [49 U.S.C. §§ 10101, *et seq.*] by a rail carrier providing transportation or service subject to the jurisdiction of the Board.... The Board may dismiss a complaint it determines does not state reasonable grounds for investigation and action. However, the Board may not dismiss a complaint ... because of the absence of direct damage to the complainant.

49 U.S.C.S. § 11701(b) (1998). If a violation is found, the STB "shall take appropriate action to compel compliance...." 49 U.S.C.S. § 11701(a) (1998). The STB may enter a declaratory order pursuant to 5 U.S.C. § 554(e) and 49 U.S.C. § 721(a). *Cities of Auburn and Kent*, STB decision, *supra* at 5 n. 10. Actions for judicial review of STB orders and decisions are taken to the court of appeals. 28 U.S.C.S. § 2321(a) (May 1999 Supp.). The court of appeals "has exclusive jurisdiction to enjoin, set aside, suspend ... or to determine the validity of ... (5) all rules, regulations, or final orders of the Surface Transportation Board...." 28 U.S.C.S. § 2342(5) (May 1999 Supp.). In sum, Plaintiffs may file a complaint with the STB and may appeal any STB action to the Court of Appeals. There has been no procedural injury to the Plaintiffs.[2]

Plaintiffs also allege harm to the environment. Where harm to the environment is alleged, the relevant showing for standing purposes is the resulting injury to the Plaintiff. *Friends of the Earth*, —— U.S. at ——, 120 S.Ct. at 704. Even if Plaintiffs properly alleged contamination of their particular drinking water as the injury, the contamination is not claimed to be imminent, nor could it be. Plaintiffs' injury would occur only if the Hauser Facility is constructed, a leak or malfunction occurs, contaminants reached the aquifer, the contaminants reached Spokane, and Plaintiffs' drinking water is contaminated. The injury is clearly conjecture and hypothetical. Plaintiffs do not have standing in this case based on their failure to identify an injury in fact.

"Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (internal ellipses, square brackets, and quotation marks omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (internal quotation marks omitted).

■ Even if the potential contamination of the Plaintiffs' drinking water satisfied the "injury in fact" element, Plaintiffs have not presented sufficient facts to satisfy the causation and redressability elements. Plaintiffs allege that the "causal connection between [the environmental] harm and the railroad's failure to apply for a permit from the NSTB is that the process of Kootenai County is not as well-equipped to hear matters of this nature." Plaintiffs' Response filed 4/10/00 p. 3, ll. 9–11. Assuming this is true, that is insufficient to establish that: (1) the STB would exert regulatory authority over the BNSF facility and issue permits if BNSF applied; (2) the STB permits would prevent the contamination; (3) with only local permits, and without the STB permits, a leak or malfunction will occur; (4) the leak will

---

**2.** If there had been a procedural injury, the standing analysis would be altered. When a person has a procedural right to protect a concrete interest, he can assert a violation of that right and have standing without meeting all the normal standards for redressability and immediacy. *Lujan*, 504 U.S. at 572 n. 7, 112 S.Ct. 2130.

contaminate the aquifer; (5) the contamination will reach Spokane County; and (6) the Plaintiffs' drinking water will be contaminated. This series of hypotheticals requires a conclusion that the Plaintiffs' injury is not directly nor fairly traceable to BNSF's actions.

Even if Plaintiffs received a favorable decision and the Court were to declare that BNSF must apply to the STB for permits and restrain BNSF from progressing with the facility construction until the STB acted on the application, there is no assurance that the STB, as a third party not before the Court, would issue permits. *Graham v. Federal Emergency Management Agency,* 149 F.3d 997, 1002 (9th Cir.1998) (some plaintiffs lacked standing because it was purely speculative that a federal agency, not before the court, would reverse its determination and provide the relief sought). It is also very speculative that the permits issued would prevent the contamination while the local permits would not. The Court concludes that Plaintiffs lack standing in this action and the Court is thus without subject matter jurisdiction.

■ *Federal Question Jurisdiction.* The protection of the sole-source Spokane Valley—Rathdrum Prairie Aquifer is a subject of great local concern. This Court is a court of limited, not general, jurisdiction, however, *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). When plaintiffs assert federal question jurisdiction pursuant to 28 U.S.C. § 1331, as the Plaintiffs have in this case, the plaintiffs must identify a federal constitutional provision or statute under which they can raise a claim or the court has no jurisdiction.

■ The federal statute which relates to the potential regulatory permitting for the Hauser Facility is 49 U.S.C. §§ 10101, *et seq.* The statute rests exclusive jurisdiction of railroad transportation in the STB. 49 U.S.C. § 10501(b). By placing exclusive jurisdiction of railroad transportation under the STB, Congress has abrogated district court jurisdiction under § 1331. *Pejepscot Indus. Park, Inc. v. Maine Central Railroad Co.,* 59 F.Supp.2d 109, 114 (D.Me.1999); *cf. Clark v. Busey,* 959 F.2d 808, 811 (9th Cir.1992) (federal question jurisdiction preempted by Federal Aviation Act provision vesting exclusive jurisdiction of the claim in court of appeals).[3]

In this case, a narrow exception exists in that the parties agree that the ICCTA provides that a person may file a civil action to enforce an order of the STB. 49 U.S.C. § 11704; *Pejepscot,* 59 F.Supp.2d at 113 (49 U.S.C. § 11704(a) and (c)(1) confer jurisdiction over a civil action only if the plaintiff seeks to enforce a prior order by the STB). It is undisputed that the STB has issued no order regarding the Hauser Facility. Thus, Plaintiffs cannot raise a claim under the ICCTA, 49 U.S.C. § 11704.

Jurisdiction is not conferred on the district court by Plaintiffs' request for declaratory judgment and an injunction. The Declaratory Judgment Act, 28 U.S.C. § 2201, affords a remedy only when subject matter jurisdiction is already established. *Clark,* 959 F.2d at 812. Similarly, Fed.R.Civ.P. 65 provides that a district court may issue an injunction, but the rule does not confer subject matter jurisdiction on the Court.

The only other federal statute discussed was the National Environmental Policy Act [NEPA], 42 U.S.C. § 4321, *et seq.* The parties agree that NEPA is a proce-

---

**3.** The posture of this case may be contrasted with a case in which a railroad raises a true preemption issue. A federal court would have federal question jurisdiction over a case in which a plaintiff railroad seeks injunctive relief against a state from state regulations claimed to be preempted by a federal statute.

*CSX Transp., Inc. v. Georgia Public Service Com'n,* 944 F.Supp. 1573, 1576 (N.D.Ga. 1996). The issue of preemption by virtue of the Supremacy Clause of the Constitution presents the federal question. *Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

dural statute that does not provide a private right of action. *Sierra Club v. Penfold,* 857 F.2d 1307, 1315 (9th Cir.1988). The STB would be obligated to consider NEPA and possibly require an environmental impact statement regarding the Hauser Facility only if it exerted its regulatory authority over the project. *See,* 49 C.F.R. § 1105.1. Accordingly, Plaintiffs cannot raise a claim under NEPA or the ICCTA so no federal question jurisdiction exists.

■ Normally the Court would grant a party leave to amend a complaint even if the defect is jurisdictional. 5A CHARLES WRIGHT & ALLEN MILLER, FEDERAL PRACTICE & PROCEDURE § 1350 at 217 (2d ed.1990). However, if the pleader cannot truthfully amend to allege jurisdiction, the case may be dismissed without leave to amend. *Id.* at 225. The Court concludes in this case that amendment would be futile and leave to amend will not be granted. A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and therefore is a dismissal without prejudice. *Wages v. I.R.S.,* 915 F.2d 1230, 1234 (9th Cir.1990).

Defendants asserted in the alternative to their request for dismissal based on a lack of subject matter jurisdiction, that the Plaintiffs have failed to state a claim. The Court would only be permitted to reach this issue if it had determined that it had jurisdiction. *Wages v. I.R.S.,* 915 F.2d at 1234. As the Court has concluded that it is without jurisdiction, it may not reach the issue of whether Plaintiffs stated a claim.

### III. CONCLUSION

Plaintiffs have raised environmental concerns about BNSF's Hauser Facility which has received permitting approval from Kootenai County. This Court does not have subject matter jurisdiction over the case as the Plaintiffs do not have standing and federal question jurisdiction does not exist. In the absence of jurisdiction, this Court cannot grant Plaintiffs the requested declaratory and injunctive relief.

Plaintiffs appear to have a viable opportunity to raise their environmental concern regarding the Hauser Facility before the STB. This Court cannot assure Plaintiffs that the STB will exert its regulatory authority over the Hauser Facility. If the STB does not do so, it will confirm Plaintiffs' fear that a regulatory void exists that would require a legislative solution. Accordingly,

**IT IS ORDERED** that:

1. Defendants' Motion for Permission to Cite Unpublished Opinions, **Ct.Rec. 8,** is **GRANTED.**

2. Defendants' Motion to Dismiss for Lack of Jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1), **Ct.Rec. 12–1,** is **GRANTED.** All claims against Defendants are **DISMISSED WITHOUT PREJUDICE, with each side to bear its own costs.**

3. Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Fed. R.Civ.P. 12(b)(6), **Ct.Rec. 12–2,** is **DISMISSED AS MOOT.**

The District Court Executive is directed to file this Order and provide copies to counsel and to **CLOSE THIS FILE.**