**BOSTON AND MAINE CORPORATION, et al., Plaintiffs,**

v.

**TOWN OF AYER, et al., Defendants.**

**No. Civ.A. 99–12606–JLT.**

United States District Court, D. Massachusetts.

March 20, 2002.

Eric L. Hirschhorn, M. Carter De-Lorme, Winston & Strawn, Washington, DC, Michael R. Schneider, Mark Bobrowski, Concord, MA, Robert B. Culliford, Guilford Rail System, N. Billerica, MA, for plaintiffs.

Jocelyn M. Sedney, Brody, Hardoon, Perkins & Keston, Boston, MA, for defendants.

## *MEMORANDUM*

TAURO, District Judge.

Plaintiffs Boston & Maine Corporation, Springfield Terminal Railway Company, and Guilford Transportation Industries (collectively "Guilford") sue the Town of Ayer, Ayer Board of Selectman, Ayer Planning Board, and Ayer Board of Health (collectively "Ayer") for Declaratory and Injunctive relief to prevent Ayer from unlawfully regulating Plaintiffs' construction of an automobile unloading facility in Ayer, Massachusetts. Guilford also seeks damages.

Both Guilford's and Ayer's motions for summary judgment are before this court.

### BACKGROUND

Since 1974, Guilford has operated an automobile unloading facility on a forty acre parcel of land in Ayer (the "Existing Facility"). The Existing Facility is located within a "Heavy Industrial District" as established by Ayer's zoning bylaws. In 1997, Guilford purchased 126 acres of land, known as the San Vel site, across the road from the Existing Facility, also within the "Heavy Industrial" area. Guilford intend-

ed to construct and operate a new automobile unloading facility on 57.7 acres of the San Vel site (the "New Facility"). Under Guilford's plan, automobiles would arrive at the New Facility and be unloaded, temporarily stored, and later distributed to dealers and customers in Massachusetts and throughout New England. The New Facility is located within both the Zone II aquifer area to Ayer's Spectacle Pond wells and the Zone III aquifer area to the Town of Littleton's Spectacle Pond well.

Guilford commenced the approval process for the New Facility in November 1997. In May 1998, pursuant to Mass.Gen. Laws. ch. 131 § 40, Guilford filed a "notice of intent" with the Ayer Conservation Commission. Guilford then applied to the Ayer Planning Board for Site Plan Approval for the New Facility. On August 26, 1999, the Planning Board issued a Certificate of Approval for the New Facility (the "Certificate"), but made the permit subject to thirty-six conditions. On August 18, 1999, the Ayer Board of Health adopted new local regulations, authorizing it to designate certain occupations as "noisome trades" and to prohibit the practice of such trades within town limits. On November 17, 1999, the Ayer Board of Health declared that "an 'auto unloading facility' will be considered a noisome trade" under a Town of Ayer ordinance.

Guilford viewed the Certificate, with its thirty-six conditions, and the "noisome trade" designation as an Ayer strategy to keep Guilford from constructing its facility. On December 20, 1999, Guilford filed this lawsuit, alleging that the Town's efforts were preempted by 49 U.S.C. 10501(b), part of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA")[1] and the Supremacy Clause[2], and violated the Dormant Commerce Clause of the United States Constitution.[3] Guilford seeks declaratory and injunctive relief, and damages.

In August 2000, the Parties filed cross-motions for summary judgment, and this court took those motions under advisement. At the suggestion of Ayer[4], this court referred the action to the Surface Transportation Board (the "STB")[5] on October 19, 2000, and asked that the STB "evaluate the right of the defendants, if any, to regulate the plaintiffs' proposed development off Willow Road in the Town of Ayer ... [to assist] this court in determining the rights, duties, and obligations of the parties."[6]

The STB instituted a Declaratory Order Proceeding pursuant to 5 U.S.C. § 554(e) and 49 U.S.C. § 721 to address whether the ICCTA preempted Ayer's actions.[7] According to 5 U.S.C. § 554(e), "[t]he agency, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty."[8] On May 1, 2001 the STB issued its decision[9]. The STB decided that Ayer's actions were preempted, noting that Guil-

---

**1.** Codified at 49 U.S.C. §§ 701–727, 10101–16105.

**2.** U.S. Const. art. VI, § 2.

**3.** U.S. Const. art. I, § 8, cl. 3.

**4.** See Defs.' Mem. in Supp. of Cross Mot. for Summ.J. [# 44] at 12–15; Defs.' Opp. to Pls.' Mot. for Summ.J. [# 51] at 3.

**5.** The ICCTA replaced the Interstate Commerce Commission (the "ICC") with the STB.

**6.** See October 19, 2000 Order [# 63].

**7.** See Joint Petition for Declaratory Order–Boston & Maine Corporation and Town of Ayer, STB Finance Docket No. 33971, 2000 STB LEXIS 772 (December 22, 2000).

**8.** 5 U.S.C. § 554(e) (1994).

**9.** See Attached Joint Petition for Declaratory Order–Boston & Maine Corporation and Town of Ayer, MA, STB Finance Docket No. 33971,

ford had indicated "that it [would] take appropriate action to address the risk of pollutant leaks at the new facility." [10] In response to Ayer's argument that its regulation of the New Facility is not preempted because it is rooted in the Safe Drinking Water Act [11] ("SDWA") and the Clean Water Act [12] ("CWA"), the STB found that "the record here supports the conclusion that the SDWA and CWA are being used merely as a pretext." [13] Accordingly, the STB determined that "Ayer's Planning Board permit process, the ordinance determining that automobile unloading facilities are a 'noisome trade' or nuisance, and the Conservation Commission's pre-approval process are all preempted under 49 U.S.C. § 10501(b) and the court and agency decisions interpreting it." [14] Ayer filed a Petition for Reconsideration of that determination on May 21, 2001. On October 5, 2001, the STB issued a decision affirming its earlier decision that the ICCTA preempted Ayer's actions. [15]

This court ordered the parties to submit supplemental briefs in support of their motions for summary judgment to specifically address the impact of the STB decision. [16]

## DISCUSSION

Guilford moves for summary judgment, arguing that the STB decision is binding upon this court. Ayer argues that the STB decision is merely advisory and not binding, and that even if it is binding, this court should hold an evidentiary hearing to determine which of the thirty-six conditions in the Certificate are preempted.

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [17] When a trial court decides a motion for summary judgment, it "examines the entire record in the light most flattering to the nonmovant and indulges all reasonable inferences in that party's favor." [18] "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [courts] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." [19]

Ayer urged this court to refer this matter to the STB, citing the doctrine of primary jurisdiction and the First Circuit's discussion of that doctrine in *Pejepscot Industrial Park, Inc. v. Guilford Transportation.* [20] The *Pejepscot* court held that there are several factors to evaluate when

2001 STB LEXIS 435 (May 1, 2001) ("May Decision").

10. *Id.* at *5.

11. *See* 42 U.S.C. § 300f.

12. *See* 33 U.S.C. § 1311.

13. May Decision at *23–24.

14. *Id.* at *2.

15. *See* attached *Joint Petition for Declaratory Order–Boston & Maine Corporation and Town of Ayer,* STB Finance Docket No. 33971, 2001 STB LEXIS 782 (October 5, 2001) ("October Decision").

16. *See* December 10, 2001 Order [# 115].

17. Fed.R.Civ.P. 56(c).

18. *Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997) (internal citations and quotations omitted).

19. *Adria Intern. Group, Inc. v. Ferre Development, Inc.,* 241 F.3d 103, 107 (1st Cir.2001).

20. 215 F.3d 195 (1st Cir.2000); *See* Defs.' Mem. in Supp. of Cross Mot. for Summ.J. [# 44] at 14–15.

considering whether to refer an action to an agency: "(1) whether the agency determination l[ies] at the heart of the task assigned to the agency by Congress; (2) whether agency expertise [i]s required to unravel intricate, technical facts; and (3) whether though perhaps not determinative, the agency determination would materially aid the court."[21] The instant action was suitable for referral, Ayer argued, because the STB is "uniquely qualified to determine whether state law should be preempted."[22] Convinced that the STB's expertise might resolve part of the controversy, this court referred the action to the STB.[23] Now, faced with an adverse decision from the STB, Ayer maintains that the STB does not have primary jurisdiction over this matter, and that its determination that the ICCTA preempts Ayer's actions was merely advisory.[24]

Section 1336 of Title 28 provides that:

(b) when a district court ... refers a question or issue to the Surface Transportation Board for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Surface Transportation Board arising out of such referral.

(c) Any action brought under subsection (b) of this section shall be filed within 90 days from the date that the order of the Surface Transportation Board becomes final.[25]

An action of the STB is "final on the date on which it is served, and a civil action to enforce, enjoin, suspend, or set aside the action may be filed after that date."[26]

■ Although Ayer contends that the STB's order was merely advisory, it nevertheless has not followed the procedure for review delineated in the statute. Ayer has not formally initiated any type of review proceeding before this court, as is required by 28 U.S.C. 1336(c).[27] Guilford argues that since Ayer has not petitioned this court for review of the STB decision, the decision is now binding, terminating the instant action.

Guilford is correct. As the First Circuit has said, upon review of a case procedurally similar to the instant case, "when a district court refers an issue to the ICC, a party aggrieved by the ICC's order must file an action for review within ninety days. No such action was filed in this case within the time allotted. Thus the decision of the ICC ... became binding on the district court."[28] Similarly, in a more recent case in the Eastern District of Pennsylvania in which the plaintiff did not request review of the ICC order until ninety days had passed, the court held that "[t]he [c]ourt has no authority to extend the statutory time limit.... If the aggrieved party fails

---

**21.** *Pejepscot,* 215 F.3d at 205 (internal citations omitted).

**22.** *CSX Transportation, Inc. v. Georgia Public Service Commission,* 944 F.Supp. 1573, 1584 (N.D.Ga.1996); *See* Defs.' Mem. in Supp. of Cross Mot. for Summ.J. [# 44] at 12.

**23.** *See* October 19, 2000 Order [# 63].

**24.** *See* Supp.Mem. in Supp. of Defs.' Opp'n. to Pls.' Mot. for Summ.J [# 119].

**25.** 28 U.S.C. § 1336.

**26.** 49 U.S.C. § 722(d).

**27.** Nor has either party joined the United States as a party, and "[i]t seems clear that a referring court should not review the Commission's order until the United States and the Commission are properly made parties and given an opportunity to defend the Commission's order." *See Keller Industries, Inc., et. al. v. United States,* 304 F.Supp. 852, 855 (N.D.Fl.1969).

**28.** *Locust Cartage Co., Inc. v. Transamerican Freight Lines, Inc.,* 430 F.2d 334, 341 (1st Cir.1970) (citations omitted).

to challenge the ICC decision within the statutory period, the ICC decision becomes final and binding upon the referring court."[29]  In its supplemental brief, Ayer "requests that this court review certain findings of the STB pursuant to its authority to do so under 28 U.S.C. 1336."[30]  But the ninety day period has expired, and this court is now bound by the STB decision.[31] This court, therefore, adopts the STB's determination that Ayer's regulations are preempted by the ICCTA.

■  From the beginning of this case, Guilford has been concerned with the thirty-six conditions which Ayer sought to impose on the construction of the New Facility by including them in the Certificate. Ayer contends that even if this court finds that the STB's preemption analysis is correct, it should hold an evidentiary hearing on those conditions to determine whether they are preempted.[32]  Though the STB said that "the fact that the 36 conditions were initially imposed as part of an impermissible permit does not mean that every one of them is preempted," the STB found that the permit process itself was preempted and impermissible.  This court, therefore, declines to hold an evidentiary hearing because those conditions were imposed as part of the Certificate, not individually.  The STB found that the permit process was preempted.  Having adopted the STB's preemption analysis, this court

finds that the thirty-six conditions fail as part of the permit process.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment is ALLOWED and Defendants' Motion for Summary Judgment is DENIED.

AN ORDER WILL ISSUE

---

**29.**  *F.P. Corp. v. Ken Way Transportation, Inc. et al,* 848 F.Supp. 1181, 1185 (E.D.Pa.1994) citing *Atchison, Topeka and Santa Fe Railroad Co. v. Trailer–Train, Inc.,* 455 F.Supp. 520, 523 (N.D.Ill.1978); *Locust Cartage Co.,* 430 F.2d 334, 341 (1st Cir.1970).

**30.**  *See* Supp.Mem. in Supp. of Defs.' Opp'n. to Pls' Mot. for Summ.J. [# 119] at 4.

**31.**  Even if Ayer's Petition for Reconsideration tolled the running of the ninety day period, which is consistent with the procedure for reviewing orders of administrative agencies, *See I.C.C. v. Brotherhood of Locomotive Engi-*

*neers et. al.,* 482 U.S. 270, 284–5, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987), the ninety days has still elapsed here.  The STB served its initial decision on May 1, 2001.  Ayer did not petition for reconsideration until May 21, thus twenty days of the ninety day period had passed.  The STB denied the Petition for Reconsideration on October 5, 2001.  If the Petition for Reconsideration had tolled the running of the ninety day period, it began to run again on October 5 and expired on December 14, 2001.

**32.**  *See* Defs' Supp.Mem. in Supp. of Cross Mot. for Summ.J. at 13 [# 119].