**UNITED STATES of America,**
**Plaintiff,**

v.

**ST. MARY'S RAILWAY WEST, LLC**
**and Claudius Strickland,**
**Defendants.**

**No. CV 5:13–28.**

United States District Court,
S.D. Georgia,
Waycross Division.

Dec. 4, 2013.

Kenneth D. Crowder, Crowder Stewart, LLP, Augusta, GA, Paul Cirino, Kim Noelle Smaczniak, U.S. Dept. of Justice, Washington, DC, Sanjay S. Karnik, Edgar Bueno, U.S. Attorney's Office—Savannah, Savannah, GA, for Plaintiff.

Harry D. Dixon, Jr., Donnie Dixon, Attorney at Law, LLC, Savannah, GA, Anthony L. Cochran, Chilivis, Cochran, Larkins & Bever, LLP, Atlanta, GA, for Defendants.

## ORDER

LISA GODBEY WOOD, Chief Judge.

Presently before the Court are Defendant Claudius Strickland's Motion for Summary Judgment, Defendant St. Mary's Railway West, LLC's Motion for Summary Judgment, and the United States of America's Motion for Partial

Summary Judgment. Dkt. Nos. 8–9, 18. Upon due consideration, Strickland's motion is **DENIED,** St. Mary's motion is **DENIED,** and the Government's motion is **GRANTED.**

## I. Factual Background

This action is predicated upon unauthorized discharges into wetlands during the construction of spur and side tracks. *See* Dkt. No. 1. The following factual summary is taken from Defendants' Motions for Summary Judgment, Dkt. Nos. 8–9, Plaintiff's Statement of Material Facts and Defendants' response thereto, Dkt. Nos. 28–29, and Defendants' Supplemental Statement of Material Facts, Dkt. No. 66.

In June 2008, Defendant St. Mary's Railway West, LLC ("the Railway") began to construct spur and side tracks within its right-of-way. Dkt. Nos. 8 ¶ 1; 28 ¶ 1; 66 ¶ 1. Spur and side tracks are integral to the Railway's operation and interstate commerce because rail carriers pay the Railway to store inactive cars and locomotives during periods of economic inactivity. Dkt. Nos. 8 ¶ 3; 66 ¶ 21. For these tracks, adequate drainage and clearing of vegetation is critical for safety and maintenance and required by federal regulations. *See* Dkt. No. 66 ¶¶ 4–14, 27.

The United States of America ("the Government") alleges that, during the course of construction, pollutants were discharged into tributaries in wetlands, resulting in a disturbance of more than five acres and a violation of the Clean Water Act ("CWA"). Dkt. No. 8 ¶¶ 4–5. Defendants had not obtained a § 404 permit from the United States Corps of Engineers ("the Corps"). *Id.* ¶¶ 6–7.

Before beginning construction, the Railway and its general partner and operator, Defendant Claudius Strickland, had sought advice of legal counsel regarding the exclusive jurisdiction of the Surface Transportation Board ("the Board"). Dkt. Nos. 1 ¶ 8; 8 ¶ 2. Defendants' counsel opined, "The effect of th[e] exclusive [Board] jurisdiction is that no other federal or state agency can require authority for construction of the trackage under consideration, nor otherwise exert regulatory authority over such trackage." Dkt. Nos. 8–5, Ex. E; 28 SI 2.

Thereafter, in October 2008, Defendants communicated with the Corps about the track construction and the "exclusive" jurisdiction of the Board. Dkt. No. 8 ¶¶ 6, 8, 16. Afterward, the Corps never notified Defendants whether a § 404 permit would or could be required for the construction of spur and side tracks. Dkt. Nos. 8 SI 9; 28 SI 3; 29, at 4.

On December 9, 2008, the EPA issued an administrative compliance order that required Defendants to conform with the CWA. Dkt. Nos. 8 ¶ 15; 8–11, Ex. K; 28 ¶¶ 4–5; 44 ¶ 3. On December 24, 2008, Defendants filed a declaratory action against the EPA, attempting to raise the issue of the Board's exclusive jurisdiction. Dkt. Nos. 8 ¶ 11; 8–6, Ex. F. In April 2009, the EPA and Defendants stipulated to a dismissal of the declaratory action without prejudice, which was approved. Dkt. Nos. 8 SISI 13–14; 8–7, Ex. G; 8–8, Ex. H. On February 14, 2011, the EPA issued an additional administrative order. Dkt. Nos. 8 ¶ 17; 8–12, Ex. L. Defendants contend that the EPA's administrative orders were based on inaccurate representations about the width of the Railway's right-of-ways and contradictory conclusions about the amount of acreage impacted by Defendants' activities. Dkt. Nos. 8 ¶ 17; 29, at 2–3.

## II. Procedural Background

In March 2013, the Government filed its complaint ("the Complaint") against De-

fendants, alleging various violations of the CWA. *See* Dkt. Nos. 1; 8 ¶¶ 4–5. On May 23, 2013, the Railway filed a motion to dismiss the Complaint. Dkt. No. 8. The next day, Strickland filed a nearly identical motion to dismiss. Dkt. No. 9. In June 2013, the Government filed its Motion for Partial Summary Judgment ("the Government's Motion"), which was also in opposition to Defendants' motions to dismiss. Dkt. No. 18. In August 2013, a motions hearing was held, at which the Court converted Defendants' pending motions into motions for summary judgment ("Defendants' Motions") pursuant to Federal Rule of Civil Procedure ("Rule") 12(d). Dkt. No. 48. The parties' motions have been fully briefed. Dkt. Nos. 8, 9, 18, 18–1, 24, 25, 32, 47, 65, 68.

### III. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

### IV. Discussion

The parties' motions for summary judgment are primarily focused on two issues: (A) whether the EPA's ability to enforce the CWA is preempted by the Interstate Commerce Commission Termination Act ("the ICCTA") and (B) whether the United States is equitably estopped from bringing a civil CWA claim against Defendants because of the Corps' unresponsiveness to Defendants' communication in October 2008. Dkt. Nos. 18, at 1; 65, at 1. The Court also addresses whether the Complaint satisfies Rule 8 and whether the Fifth Amendment vagueness doctrine applies.

#### A. Preemption of the EPA's Ability to Enforce the CWA

The relevant provision for preemption under the ICCTA is 49 U.S.C. § 10501(b)(2) ("the Statute"), which says:

The jurisdiction of the Board over ... the construction, acquisition, [or] operation ... of spur ... or side tracks ... is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

The parties dispute how to give effect to this preemption provision. Defendants

contend that "the plain language of the statute shows Congress's intent for ICC-TA preemption of *federal* regulatory authority to be equally clear" as that for state regulatory authority. Dkt. No. 8, at 11–12; *see also* Dkt. No. 24, at 2–3. That is, a regulation affecting track construction is the "regulation of rail transportation," and therefore the ICCTA provides the exclusive federal remedy. Dkt. No. 8, at 12. The Government, while recognizing the provision's broad language, contends that it does not vest all aspects of railroad activities and operations within the Board's jurisdiction. Dkt. No. 18–1, at 7. Rather, regulations having an incidental or remote effect on rail transportation are permitted; only those having the effect of managing or governing rail transportation are preempted. *See id.* at 8; Dkt. No. 32, at 2–3.

■ The Court holds that § 10501(b)(2) does not override the EPA's jurisdiction to enforce the CWA against Defendants. The case at bar is controlled by *Florida East Coast Railway Co. v. City of West Palm Beach,* 266 F.3d 1324 (11th Cir. 2001). There, the Eleventh Circuit addressed whether the Statute preempted a municipality's zoning and occupational license ordinances. *Id.* at 1330. The court noted that the Statute applies only to laws "with respect to *regulation* of rail transportation," which "necessarily means something qualitatively different from laws 'with respect to rail transportation.' " *Id.* at 1331. Therefore, the preemption provision displaces only those laws that "have the effect of 'managing' or 'governing' rail transportation," while "permitting the continued application of laws having a more

remote or incidental effect on rail transportation." [1] *Id.* (editorial marks omitted). From this understanding of the Statute's scope, the Eleventh Circuit concluded that zoning ordinances of general applicability, when applied to a private entity leasing property from a railroad for non-rail transportation purposes, did not constitute regulation of rail transportation. *Id.*

Defendants distinguish *Florida East Coast Railway Co.'s* outcome as limited to non-rail transportation activity, while the present case involves a matter of rail transportation. Dkt. No. 8, at 13. Indeed, the Eleventh Circuit found that the Statute's definition of "transportation" encompasses "facilities that, while not owned by the railroad companies, were nevertheless used in interstate commerce for the benefit of either the shipping public or the railroad companies themselves." *Fla. E. Coast Ry. Co.,* 266 F.3d at 1336. However, this does not render the case inapplicable, especially in regard to the Court's ability to read the CWA and ICCTA harmoniously.

■ Defendants' reading of the Statute is contrary to basic principles of statutory construction and not supported by Congress's intent. When possible, "statutes should be construed so as not to be in conflict with each other." *Araya v. McLelland,* 525 F.2d 1194, 1196 (5th Cir. 1976). When facing statutes that may overlap in some respects, the Court is "not at liberty to pick and choose among congressional enactments." *Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Executives' Ass'n,* 491 U.S. 490, 510, 109 S.Ct. 2584, 105 L.Ed.2d 415 (1989) (quoting *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474,

---

1. A number of other circuits have explicitly adopted this position as well. *E.g., Franks Inv. Co. LLC v. Union Pac. R.R. Co.,* 593 F.3d 404, 410 n. 2 (5th Cir.2010); *PCS Phosphate Co. v. Norfolk S. Corp.,* 559 F.3d 212, 218 (4th Cir.2009); *Adrian & Blissfield R.R. Co. v. Vill. of Blissfield,* 550 F.3d 533, 539 (6th Cir.2008); *N.Y. Susquehanna & W. Ry. Corp. v. Jackson,* 500 F.3d 238, 252, 254 (3d Cir.2007).

41 L.Ed.2d 290 (1974)). "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.* (quoting *Morton,* 417 U.S. at 551, 94 S.Ct. 2474). The Court "should read federal statutes 'to give effect to each if [it] can do so while preserving their sense and purpose.'" *Id.* (quoting *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981)).

One purpose of the ICCTA, as found by the Eleventh Circuit, was to prevent "the balkanization and subversion of the Federal scheme of minimal regulation for [rail] transportation." *Fla. E. Coast Ry. Co.,* 266 F.3d at 1338 (quoting H.R.Rep. No. 104–311, at 96 (1995) (Conf.Rep.), *reprinted in* 1995 U.S.C.C.A.N. 793, 808); *see also* 49 U.S.C. § 10101 (listing 15 underlying policies in regulating the railroad industry, such as minimizing regulatory control and requiring expeditious regulatory decisions). Plausibly, this purpose might be served by vesting all such regulation, however directly or incidentally related to rail transportation, exclusively in one federal agency. However, in enacting the Statute, Congress clarified that "the exclusivity is limited to remedies with respect to rail regulation—not State and Federal law generally." *Fla. E. Coast Ry. Co.,* 266 F.3d at 1338 (emphasis omitted) (quoting H.R.Rep. No. 104–422, at 167 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 850, 852). Therefore, laws that "do not generally collide with the scheme of economic regulation (and deregulation) of rail transportation" remain fully applicable unless specifically displaced. *Id.*

The CWA's scheme for environmental protection is in no way a direct regulation on Defendants' activities. "The CWA prohibits the discharge of pollutants … into the waters of the United States, except in compliance with various sections of the CWA, including [§ ] 404." *Fund for Animals, Inc. v. Rice,* 85 F.3d 535, 542 (11th Cir.1996) (footnote omitted). The CWA's prohibition against pollutant discharges does not discriminate against those operating in the rail transportation industry, but instead applies generally to "any person." 33 U.S.C. § 1311(a). It is meant merely to "protect[ ] the quality of our Nation's waters for esthetic, health, recreational, and environmental uses." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs,* 531 U.S. 159, 175, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). The Court does not construe this as entailing any conflict with the ICCTA's separate purpose in simplifying the regulatory regime over the railroad industry. In fact, federal regulations concerning the Board and its procedures directly countenance an expectation that private actors comply with § 404 and other sections of the CWA by consulting with the Corps or EPA. *See* 49 C.F.R. §§ 1105.7(e)(9)(ii)-(iii). Given the lack of positive repugnancy between the CWA's and ICCTA's jurisdictional provisions, a statutory construction giving effect to both properly reflects Congress's purpose. *Cf. Tyrrell v. Norfolk S. Ry. Co.,* 248 F.3d 517, 523 (6th Cir.2001) (reading the ICCTA's and Federal Railway Safety Act's jurisdiction provisions as harmonious).

Indeed, harmonizing the CWA and ICCTA conforms to how an overwhelming majority of other courts and the Board have treated the issue. For example, the Board has noted that "nothing in [§ ]10501(b) is intended to interfere with the role of state and local agencies in implementing Federal environmental statutes such as … the Clean Water Act." *Friends of the Aquifer, City of Hauser, ID, Hauser Lake Water Dist., Cheryl L. Rodgers, Clay Larkin, Kootenai Envtl. Alliance, R.R. & Clearcuts Campaign,* No. 33966, 2001 WL 928949, at *4 (S.T.B. Aug. 10, 2001); *see*

also *Joint Petition for Declaratory Order—Boston & Me. Corp. & Town of Ayer,* No. 33971, 2001 WL 458685, at *5 (S.T.B. Apr. 30, 2001) ("[N]othing in [§ ]10501(b) is intended to interfere with the role of state and local agencies in implementing Federal environmental statutes, such as ... the CWA ...."), *aff'd sub nom. Boston & Me. Corp. v. Town of Ayer,* 191 F.Supp.2d 257 (D.Mass.2002); *Cities of Auburn & Kent, WA—Petition for Declaratory Order—Burlington N. R.R. Co.— Stampede Pass Line,* No. 33200, 1997 WL 362017, at *2 n. 7 (S.T.B. July 1, 1997) (stating that the Board's Secretary found a local permitting process preempted but noted that a railroad still had to comply with environmental requirements imposed by other federal statutes, such as the CWA), *aff'd sub nom. City of Auburn v. United States Gov't,* 154 F.3d 1025 (9th Cir.1998).

Numerous Article III courts have also found no conflict between the statutes. *See, e.g., Humboldt Baykeeper v. Union Pac. R.R. Co.,* No. C 06–02560 JSW, 2010 WL 2179900, at *3 (N.D.Cal. May 27, 2010) (permitting an attempted enforcement of the CWA and declining to find the cost of litigation as unreasonably burdening interstate commerce); *Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.,* No. CV 06–01416–JFW(PLAx), 2007 WL 2439499, at *5 (C.D.Cal. Apr. 30, 2007) (noting that the ICCTA does not preempt the Clean Air Act and other federal environmental regulations), *aff'd,* 622 F.3d 1094 (9th Cir.2010); *Green Mountain R.R. Corp. v. Vermont,* No. Civ.1:01–CV– 00181JGM, 2003 WL 24051562, at *8 (D.Vt. Dec. 15, 2003) (finding a local preclearance permitting process preempted while noting that compliance under applicable federal laws, such as the CWA, could still be sought), *aff'd,* 404 F.3d 638 (2d Cir.2005), *cert. denied,* 546 U.S. 977, 126 S.Ct. 547, 163 L.Ed.2d 460 (2005); *Flynn*

*v. Burlington N. Santa Fe Corp.,* 98 F.Supp.2d 1186, 1189 (E.D.Wash.2000) (noting that local governments may play a role in implementing the CWA despite the Board's exclusive jurisdiction).

In the face of the voluminous authority supporting a harmonious reading of the Board's exclusive jurisdiction and the ability of entities—including state and local governments—to enforce the CWA, the Court holds that the EPA has acted within its proper jurisdiction in bringing the present action. Although Defendants have made several specific (and in some instances novel) arguments for preemption, as discussed below, none can overcome the conclusion that preemption does not apply.

### 1. Drainage and Vegetation Exemptions

Defendants argue that federal regulation of drainage and vegetation on tracks under 49 C.F.R. §§ 213.33 and 213.37 support a determination that the ICCTA's scope is comprehensive and displaces the CWA. Dkt. No. 65, at 3–5. However, the regulations, like the Statute, can be consistently read with the requirements imposed by the CWA: the regulations ensure that railways are in a safe, usable condition, while the CWA protects United States waters from pollutants. Therefore, the regulations have no bearing on the Court's preemption analysis.

### 2. Self–Executing Exemption

Defendants argue that they did not need to obtain a § 404 permit because, in connection with clearing vegetation and maintaining proper drainage, they are protected by a self-executing exemption under 33 U.S.C. § 1344(f)(1). Dkt. No. 65, at 12–13. Availing oneself of this exemption is a defense to an enforcement action brought under the CWA. *See June v. Town of Westfield,* 370 F.3d 255, 256 (2d Cir.2004). Although Defendants may argue later that they are shielded from liability under this

exemption, it has no bearing on the present issue before the Court—that is, whether the ICCTA displaces the EPA's ability to bring an enforcement action under the CWA against Defendants.

3. Interference with Rail Transportation

Defendants argue that the EPA lacks authority to bring the present action because it is unduly restricting railroad operations and unreasonably burdening interstate commerce. Dkt. Nos. 8, at 14–16; 24, at 4–8; 25, at 4–11; 65, at 7–11. Defendants' argument is without merit.

The Board has identified categories of state and local regulation that are preempted by the ICCTA. These categories include preclearance requirements that could be used to deny a railroad the ability to conduct its operations as authorized by the Board, intrusions into matters regulated by the Board, and other state actions that would have the effect of unreasonably burdening or interfering with rail transportation. *CSX Transp., Inc.— Petition for Declaratory Order*, No. 34662, 2005 WL 584026, at *7–8 (S.T.B. Mar. 14, 2005). In essence, each category involves an inquiry into whether a regulation imposes an unreasonable burden on rail transportation not required by the Board or ICCTA. However, every case conducting such an inquiry involves state or local bodies applying (usually) state law.[2] And, when a state or local regulation is preempted, decisions note that federal environmental laws are still available to fill any void. *See Friends of the Aquifer*, 2001 WL 928949, at *4 (stating that nothing in the Statute is intended to interfere with state and local authorities from implementing federal environmental statutes); *Boston & Me. Corp.*, 2001 WL 458685, at *5–6 (same, while noting that whether a particular federal statute is being applied to unduly restrict railroad operations or interfere with interstate commerce is a factbound question); *Green Mountain R.R. Corp.*, 404 F.3d at 641–43 (limiting the discussion of the trouble with pre-clearance requirements to state or local regulations, not those under federal law).

Nevertheless, Defendants point to caselaw and administrative decisions suggesting that enforcement of a federal environmental statute may be impermissibly done to "unduly restrict [a] railroad from conducting its operations, or unreasonably burden interstate commerce"—"a factbound question." *See, e.g., Boston & Me. Corp.*, 2001 WL 458685, at *5–6. This requires a court to review "individual situations ... to determine the impact of the contemplated action on interstate commerce and whether the statute or regulation is being applied in a discriminatory manner, or being used as a pretext for frustrating or preventing a particular activity, in which case the application of the statute or regulation would be preempted." *Id.* at *6. For example, where towns held up construction of a railroad facility under the guise of enforcing the CWA, despite the EPA expressing no concerns about construction, the justification for enforcement was found to be a pretext. *Id.* at *6–7.

Again, however, throughout the cases on which Defendants rely, the adjudicators limit their concerns to the effect of en-

---

2. Defendants dispute that the distinction between federal and state law matters. Defendants do this despite there being "clear indication that the [the Board] itself sees some difference in the preemptive scope of 49 U.S.C. § 10501(b) between state law of general applicability and federal law of general applicability." *Holland v. Delray Connecting R.R. Co.*, 311 F.Supp.2d 744, 757 (N.D.Ind. 2004); *see also New England Cent. R.R., Inc. v. Springfield Terminal Ry. Co.*, 415 F.Supp.2d 20, 25 (D.Mass.2006) ("Courts have held in numerous cases that state statutes or regulations are preempted.").

forcement actions by state or local bodies. *See, e.g., id.* at *5 (focusing on implementation of federal environmental statutes by state and local agencies); *Friends of the Aquifer,* at *4 (same); *Boston & Me. Corp. v. Town of Ayer,* 330 F.3d 12, 17 (1st Cir.2003) (noting that local regulations are subject to a test for whether they are applied in a way that unduly restricts a railroad from conducting its operations or unreasonably burdens interstate commerce); *Green Mountain R.R. Corp.,* 404 F.3d at 642 (reciting the Board's standard for whether "state and local permitting or preclearance requirements" are preempted); *Tex. Cent. Bus. Lines Corp. v. City of Midlothian,* 669 F.3d 525, 530 (5th Cir. 2012) (noting that state laws may be preempted if they unreasonably burden or interfere with rail transportation); *Humboldt Baykeeper,* 2010 WL 2179900, at *3 (quoting the Board's conclusion that state and local agencies may implement federal environmental statutes if not done in a manner that unduly restricts railroad operations or unreasonably burdens interstate commerce). Defendants have not provided one case limiting federal action, and the Court is aware of none. The Court construes the as-applied standard as implicitly based on state or local action, not federal action. The standard looks to whether there is an "undue burden" on railroad operations or "unreasonable burden" on interstate commerce. The focus on interstate commerce is inapposite to the federal government, as an effect on interstate commerce enables rather than limits the federal government's ability to act. *See* U.S. Const. art. I, § 8, cl. 3; *United*

*States v. Lopez,* 514 U.S. 549, 551, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (striking a federal law as unconstitutional for neither regulating commercial activity nor containing a requirement that possession of a firearm be connected to interstate commerce). Similarly, the focus on whether enforcement is an "undue burden" on railroad activity appears to be lifted from dormant Commerce Clause jurisprudence, which is applicable against only state and local entities. *See, e.g., Gen. Motors Corp. v. Tracy,* 519 U.S. 278, 300, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997) (stating that the dormant Commerce Clause applies to "express discrimination against interstate commerce or undue burden upon it"); *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 585, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (reasoning that states may not impose an undue burden on interstate commerce and active participants in the national economy); *Lopez,* 514 U.S. at 579–80, 115 S.Ct. 1624 (noting that an "element of our dormant Commerce Clause jurisprudence has been the principle that the States may not impose regulations that place an undue burden on interstate commerce, even where those regulations do not discriminate between in-state and out-of-state businesses").

Even assuming that the standard may be used to restrict a federal agency's ability to enforce the CWA, Defendants have not shown an undue burden.[3] Defendants assert only that having to obtain a § 404 permit: (A) prevents construction of an integral feature of railroad operations; (B) inhibits the Railway from creating more jobs; (C) constitutes a pre-condition to

---

**3.** The Court does not countenance Defendants' argument that the Government failed to discharge its burden to provide sufficient facts, or that there is no dispute that the EPA's enforcement activity is an undue burden. Dkt. No. 25, at 4–5. Although whether there is an undue burden is a "fact-bound

determination," the Government has explicitly contested that the as-applied standard is relevant to federal action or that an undue burden exists. Even taking Defendants' factual averments as true, the Court cannot find that an undue burden is imposed on Defendants' activities.

construction; (D) is time-consuming; (E) led the Federal Railroad Administration to deny a loan to the Railway because of unresolved "issues with the EPA"; and (F) led to the Railway's business records being seized, thereby impairing its ability to conduct business. Dkt. Nos. 25, at 7–10; 65, at 9–14. None of these bases suggest that the EPA is enforcing the CWA in a discriminatory manner or as a pretext to frustrate Defendants' operations, or that the railroad industry faces additional burdens that are not incurred equally by others seeking to discharge pollutants into United States waters. As to Defendants' business records being seized and loan application being denied, these arose only from the alleged non-compliance with the CWA, not from the conditions to obtain a § 404 permit. Although Defendants seek to provide immunity to the rail industry from environmental actions by the EPA that, to the Court's knowledge, is unavailable to any other economic sector, the Court cannot find any basis to put Defendants' activities on such a pedestal. Therefore, Defendants' preemption argument is without merit, and the Government may bring the present action under the CWA.

### B. *The Effect of the Corps' Inaction*

Next, the Court addresses whether the Corps acquiesced to Defendants' (now discounted) legal position on preemption, thereby creating a defense in the present action. Defendants contend that because only the Corps is authorized to issue § 404 permits and the Corps never responded to Defendants' October 2008 communication, the "most logical, if not the only, explanation for the Corps' inaction was that it agreed with [Defendants'] conclusion" that the Board has exclusive jurisdiction over the track construction and that a § 404 permit is not required. Dkt. No. 8, at 17.

■ The Court finds no legal basis in Defendants' acquiescence argument, which the Court construes as one for equitable estoppel. Although the Supreme Court of the United States has declined to rule directly on whether equitable estoppel is a valid defense to governmental actions, courts have long expressed reservations on whether it should ever be recognized. *See, e.g., Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 66, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (holding estoppel not to be shown after "assuming estoppel can ever be appropriately applied against the Government," while also declining to adopt a flat prohibition); Hillel Y. Levin, *A Reliance Approach to Precedent*, 47 Ga. L.Rev. 1035, 1079 (2013) ("[A]lthough the Supreme Court has never completely foreclosed the possibility of adopting the doctrine [of equitable estoppel against federal action], it has typically rejected its application." (footnotes omitted)). Assuming the defense is ever appropriately applied against the government, the elements underlying it are not met here.

■ Equitable estoppel requires (1) an allegation of misconduct on the part of the party against whom the defense is made and (2) reasonable reliance by the party claiming estoppel on the adversary's conduct (3) in a manner that changed the party's position for the worse. *See Basel v. Sec'y of Defense*, 507 Fed.Appx. 873, 876–77 (11th Cir.2013) (per curiam). Against the Government, establishing estoppel entails a heavy burden. *See Heckler*, 467 U.S. at 61, 104 S.Ct. 2218. For example, in the context of the CWA, the Second Circuit rejected an estoppel argument based upon the Corps misrepresenting the extent of its jurisdiction, reliance upon this representation in placing a riprap, and the Corps' failure to meet its own deadlines in processing an application.

*See United States v. Boccanfuso,* 882 F.2d 666, 671–72 (2d Cir.1989).

Given the high bar to show actionable reliance on affirmative government action, an argument based on mere government inaction appears utterly without merit. *See, e.g., Warshauer v. Solis,* 577 F.3d 1330, 1340 (11th Cir.2009) (finding a reliance argument to force notice-and-comment rulemaking without merit given that an agency's prior enforcement policy was mere acquiescence to non-filing); *Bartlett v. U.S. Dep't of Agric.,* 716 F.3d 464, 475–76 (8th Cir.2013) (noting the heavy burden to prove the defense and establish affirmative misconduct by the Government); *Premo v. United States,* 599 F.3d 540, 547 (6th Cir.2010) ("At a minimum, Plaintiff must show some 'affirmative misconduct' by the government in addition to establishing the other elements of estoppel." (quoting *Fisher v. Peters,* 249 F.3d 433, 444 (6th Cir. 2001))). Because Defendants have not alleged any affirmative misconduct by the Corps and cannot show reasonable reliance on governmental inaction, Defendants' estoppel argument fails.

### C. Pleading Under Rule 8

Defendants argue that the Government's claim is deficient under Rule 8(a)(2) by failing to allege the Corps' regulatory position on Defendants' construction activity and whether it requires a § 404 permit. Dkt. No. 8, at 17–18. The Court finds no basis in Defendants' contention. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Government's claim is premised upon Defendants not obtaining necessary permits from the Corps to discharge material into United States waters, and the facts alleged are sufficient to suggest a plausible claim for relief under the CWA. A specific allegation of the Corps' position on whether a permit

would have been required is not necessary in light of the Complaint's other allegations.

### D. Vagueness Under the Fifth Amendment

Defendants contend that they were provided insufficient notice, before construction or at any time since, that they were required to obtain a § 404 permit, thereby implicating the Fifth Amendment's Due Process Clause in the present action. Dkt. Nos. 24, at 10; 25, at 12.

Defendants' vagueness argument is without merit. As an initial matter, the Court notes that as of December 2008, when the EPA issued its first administrative compliance order, Defendants were definitively provided notice that the EPA considered Defendants to be violating the CWA. *Cf. Tenn. Valley Auth. v. Whitman,* 336 F.3d 1236, 1256 (11th Cir.2003) (stating that noncompliance with administrative compliance orders may lead to the imposition of civil penalties and imprisonment).

Regardless, even before the compliance order was issued, what was required of Defendants under the CWA before beginning construction was not so vague as to deprive a "person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *In re Smith,* No. CWA–04–2001–1501, 2004 WL 1658484, at *39 (E.P.A. July 15, 2004). Defendants' vagueness argument boils down to not hearing back from the Corps about their legal opinion of preemption and claiming that they did not know what was required of them before beginning construction. The Court addressed the first argument in denying that Defendants are protected by equitable estoppel. As to the second argument, Defendants rely on a bare conclusion with no legal authority cited in support. Indeed, given that Defendants

contacted the Corps to communicate their legal opinion, Defendants apparently recognized that they might have to obtain a § 404 permit, but ultimately (and wrongly) concluded that they were shielded by the Board's exclusive jurisdiction. Therefore, Defendants' Fifth Amendment vagueness argument is without merit.

## V. Conclusion

For the aforementioned reasons, Claudius Strickland's Motion for Summary Judgment is **DENIED,** St. Mary's Railway West, LLC's Motion for Summary Judgment is **DENIED,** and the United States of America's Motion for Partial Summary Judgment is **GRANTED.**